## In re EDDINS.
### Patent Appeal No. 2794.

Court of Customs and Patent Appeals.
Nov. 27, 1931.

E. Hume Talbert, of Washington, D. C., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming that of the examiner, denying patentability, in view of the prior art, of claims 1 to 8, inclusive, of appellant's application filed on November 24, 1926.

Claims 1, 2, and 4 are typical of the claims in issue, and read as follows:

"1. The method of producing wooden conduits which consists first in boring the rough log, and thereafter shaping the sides with the bore as a working center.

"2. The method of producing wooden conduits which consists first in boring through the pith of the rough log, then supporting it on the saw mill carriage by means engaged in the extremities of the bore, and then successively removing rough slabs with said means as a working center to provide side walls parallel with the axis of the bore."

"4. A saw mill carriage center comprising a bore engaging nose, means for raising and lowering said nose, and means for imparting axial movement to the same."

The references relied upon are: Bowers, 39626, August 25, 1863; Thralls, 142749, September 9, 1873; Barker, 194638, August 28, 1877; Wilson, 243745, July 5, 1881; Murray, 280755, July 3, 1883; Brownell, 409665, August 27, 1889; Peck et al., 794543, July 11, 1905; Spratt, 8666822, September 24, 1907; Garlock, 1057819, April 1, 1913; Rush, 1456912, May 29, 1923; Arrillon (Fr.), 7254, October 28, 1851; Trautwein (Fr.), 468647, April 29, 1914.

As appears from the claims quoted above, the application involves a method of preparing wooden conduits (of the type used for encasing telephone cables, being rectangular in shape on the outside, and having a bore through the center), whereby the rough log is first bored to the desired diameter; thereupon the outside surface of the log is shaped by sawing. For this operation the log is mounted on a sawmill carriage, provided with centers for engaging the aforementioned bore in the ends of the log; said sawmill is provided with means for raising or lowering the position of the log with respect to the saw, and also for moving the log toward or away from said saw.

Appellant contends that heretofore the practice has been to square the log first and then bore it, and that there are many advantages in his method, including the possibility of using smaller logs for the purpose, the ability to bore the log without reference to any previously formed side walls, the ability to bore the log to the diameter required, without the necessity of any reaming, keeping the bore in the heartwood and out of the sapwood, and the consequent saving in creosote due to the fact that the sapwood is prevented from taking up so much of it, which, it is contended, was a serious defect in the old method where the bore ran into the sapwood.

In the course of its decision, the Board of Appeals said:

"The examiner has cited art showing apparatus adapted to bore long bars of wood. That disclosed in the patent to Spratt is illustrative, and it is to be noted that on page 2, line 67, there is a statement to the effect that the apparatus may be employed for boring out the hearts of logs before quarter-sawing. Of course this does not disclose the method involved in certain claims on appeal, but it is the examiner's view that it would not involve any invention to first bore out the log for conduits and then shape the exterior.

"We have noted the patent to Barker, 194,638, Aug. 28, 1877, not referred to by the examiner, which is intended to be em-

ployed for boring logs for water tubing and pump stocks and, as stated in the paragraph commencing near the top of the second column, is peculiarly adapted to run straight through the log and not sheer off into the sap. It is therefore clear that this patentee recognized the desirability of boring the opening through the hard central portion of the log and therefore anticipated appellant's contribution as to the desirability of this feature.

"We do not consider that it is material, in a patentable sense, whether Barker shaped the exterior of the logs or employed them in rough condition.

"As far as the apparatus claims are concerned, we do not consider it necessary to discuss the art cited by the Examiner. We concur in his views that if there is no invention in boring the log in the rough that there is nothing patentable in employing the ends of the opening for receiving centering devices to support the log while the exterior is given shape. The specific details of the apparatus included in certain claims we consider devoid of invention for the reasons stated by the examiner.

"The decision of the examiner is affirmed in holding that the subject-matter of the claims on appeal is devoid of invention over the art cited by him and it is further held that claims 1, 2 and 3 are devoid of invention over the disclosure of the patent to Barker above cited in view of the art cited by the examiner."

Appellant contends that Barker, the reference principally relied upon by the board as to claims 1, 2, and 3, does not show and did not contemplate boring logs in the rough before their exterior surfaces were shaped. Barker does state in his specification that "by the log rotating and the auger remaining stationary, except as far as feeding is concerned, a true bore will be made in the log, as the auger, by the rapid revolution of the log, becomes, so to say, supported upon all sides, which is not the case where the auger rotates, because then the auger is not only apt to sag down by its own weight, *but also liable to sheer off to one side into the sap, instead of running straight through the log.*" (Italics ours.)

He therefore recognized the desirability of confining the bore to the heart of the log.

Barker further states, in his specification, as follows: "The nature of my invention consists in the construction and arrangement of

a machine *for boring logs for water-tubing and pump-stocks,* as will be hereinafter more fully set forth." (Italics ours.)

Furthermore, throughout his specification he describes the article to be bored as a log, and only once does he mention the word "pump-stocks."

Funk & Wagnalls Standard Dictionary has the following definition of the word "log": "1. A bulky piece of timber cut down and cleared of branches; especially, a cut of timber of any size or length suitable for sawing into timber."

It also defines "pump-log" as follows: "A log bored out lengthwise for use as a pump-stock."

The same authority defines "pump-stock" as "The barrel or body of a pump, especially of a wooden pump."

While appellant in his brief asserts that a "pump-log" is the body portion of a completed wooden pump, there is nothing in the record to that effect, and he has cited no works of lexicographers so defining such word. We are of the opinion that the Barker disclosure includes the boring of rough logs intended for pump-stocks and water-tubing.

Whether the detailed specification of Barker impliedly requires that the ends of the log must be squared before being bored is immaterial, for there would be no invention in supplying a fastening device to the log, such as described in appellant's application as "the conventional saw mill dog," to prevent it from slipping while the means carrying it is being rotated.

While the Barker reference is an apparatus patent, whereas claims 1, 2, and 3 in issue are method claims, we hold that the method claimed by appellant is so far disclosed by Barker as to preclude the exercise of the inventive faculty by appellant in applying the method set out in claim 1.

With regard to claims 2 and 3, which have the additional element of described means for removing the slabs from the outer surface of the log, we need only state that such means are old in the prior art, as shown by the references cited.

With respect to claims 4 to 8, inclusive, which are apparatus claims, we are in agreement with the views of the Board of Appeals hereinbefore quoted.

We find no error in the decision of the Board of Appeals, and it is affirmed.

Affirmed.